UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN MITCHELL,

    Plaintiff,

v.

JEFFREY BEARD, et al.,

    Defendants.

Case No. 3:08-CV-787

(Judge Kosik)

FILED
SCRANTON
MAR 1 6 2010
PER ___ DEPUTY CLERK

## MEMORANDUM

Plaintiff, Stephen Mitchell, an inmate previously confined at the State Correctional Institution at Coal Township ("SCI-Coal Township"), Pennsylvania, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on April 28, 2008. Plaintiff filed a First Amended Complaint on June 11, 2008.[1] (Doc. 11.) Named as Defendants in the First Amended Complaint are Edward G. Rendell, Governor of the Commonwealth of Pennsylvania; Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections; Joseph Piazza, Superintendent at SCI-Coal Township; David Verano, Deputy Superintendent Centralized Services Coal Township; R. McMillian, Deputy Superintendent Facility Management Coal Township; David McAnney, Major of the Guard Coal Township; Correctional Officers Wiseman and McDonald; and Kathleen Strausser, Clerk and Prothonotary, Northumberland County Court, Sunbury, Pennsylvania. Plaintiff proceeds in forma pauperis in this matter.

This court screened Plaintiff's First Amended Complaint pursuant to 28 U.S.C. § 1915 and found that the First Amended Complaint failed to state a claim on which relief could be

---

[1] Plaintiff filed the instant action while he was an inmate at SCI-Coal Township. The allegations arise out of conduct occurring during the eleven months Plaintiff was housed at SCI-Coal Township. On January 2, 2009, Plaintiff was transferred to SCI-Smithfield, Huntingdon, Pennsylvania.

1

granted under 28 U.S.C. § 1915(e)(2)(B)(ii). On December 29, 2008, we entered an Order allowing Plaintiff to file a second amended complaint within twenty (20) days. Plaintiff filed a Second Amended Complaint on January 15, 2009. (Doc. 46.) In the court-ordered Second Amended Complaint, in addition to the defendants named in the First Amended Complaint, Plaintiff added Defendants David Popek, Business Manager; Cindy Watson, Chief Grievance Officer; Kandis Dascani, Superintendent Assistant/Grievance Officer; Sgts. Richie and Romig, Property; Chris Yackiel, Nursing Supervisor, and Denise Long, Nurse.

On February 2, 2010, Plaintiff filed a Motion to Amend Complaint citing Federal Rule of Civil Procedure 15(a) and stating that he wished to drop voluntarily most defendants previously named. (Doc. 54.) On February 4, 2010, we granted Plaintiff's Motion. (Doc. 55.) On February 5, 2010, Plaintiff filed an Amended Complaint, (Doc. 56). On February 17, and 22, 2010, Plaintiff filed additional Amended Complaints in response to our February 4, 2010 Order (Docs. 57 & 58.)[2] We will construe Plaintiff's February 22, 2010, Amended Complaint as Plaintiff's Third Amended Complaint. (Doc. 58.) In the Third Amended Complaint, Plaintiff dropped nine previously named defendants from the action. The remaining seven defendants are Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections; Joseph Piazza, Superintendent at SCI-Coal Township; David Verrano and Robert McMillian, Deputy Superintendents at SCI-Coal Township; Sharon Burks and Cindy Watson, Chief Grievance Officers; and Kathleen Strausser, Clerk of Court for Northumberland County. We will now

---

[2] We note that Plaintiff's February 5, 2010 Amended Complaint (Doc. 56) was filed prior to Plaintiff's receiving our Order of February 4, 2010 granting his motion to file an amended complaint. In an attachment to his February 22, 2010 Amended Complaint (Doc. 58), Plaintiff states that he failed to sign the February 17, 2010 Amended Complaint (Doc. 57) and so he was replacing it with the signed document. Thus, we will screen Document 58 as Plaintiff's Third Amended Complaint.

screen Plaintiff's court-ordered Third Amended Complaint (Doc. 58.) pursuant to 28 U.S.C. § 1915.[3]

## BACKGROUND[4]

Plaintiff alleges that on February 12, 2008, he was transferred from SCI-Albion to SCI-Coal Township. He was transferred as a level 4HYZ ("4 meaning custody level – H meaning Hi Security – Y meaning lifer – Z meaning single cell"). He was placed in the Restricted Housing Unit ("RHU") and remained there until he was transferred on January 2, 2009. On February 14, 2008, Plaintiff met with the Program Review Committee ("P.R.C.") comprised of Defendants Verrano and McMillian, who would decide if he was to be released to the general population from his Administrative Custody ("A.C.") status. He was told he was being held in A.C. status because of a lack of a single cell. Plaintiff discusses his A.C. status and the Administrative Custody Procedures under DC-ADM 802. He states that he was not given any written notice of his continued confinement as required under DC-ADM 802.

On February 28, 2008, he again met with the P.R.C. and was not released to general population. Because he was not released to general population, he states that he attempted to file a state petition for writ of habeas corpus in the Northumberland County Court. He alleges that to the best of his knowledge, Defendant Strausser never filed the petition. He states that he sent the petition on March 12, 2008, and never received a return copy acknowledging receipt with a docket number or a request to file an application to proceed in forma pauperis. He alleges violations of the First and Fourteenth Amendments and equal protection.

Plaintiff states that on March 27, 2008, he again saw the P.R.C. and he was told that the P.R.C. asked the Central Office (Defendant Beard) for and obtained permission to place him on

---
[3] We note that Plaintiff has filed numerous documents with this court in support of his complaints. (See Docs. 14, 20, 21, 35 & 40.)
[4] The factual background is taken from the allegations in Plaintiff's Third Amended Complaint. (Doc. 58.)

3

Long-Term A.C. ("L.T.A.C.") without giving him a hearing as per DC-ADM 802, thus triggering a liberty interest. He asserts that he appealed his placement on L.T.A.C. to Defendants Piazza and Beard. He was not satisfied with the reply and he remained confined in the R.H.U., triggering the Fourteenth Amendment.

Plaintiff states that all of his grievances were denied by the actions of Defendants Burks and Watson in violation of the First and Fourteenth Amendments because they are contrary to the D.O.C.'s policy. He asserts that he is entitled to grievance procedures that work.

Plaintiff asserts that his status was changed, that he was pursuing a constitutionally protected action in his petition for writ of habeas corpus and that he was retaliated against. He states that he feels that his sentence was changed/altered by the actions of Defendants Beard, Piazza, Verrano, McMillian, Burks or Watson and that their actions clearly show retaliation.

In his request for relief, Plaintiff asks for one million dollars from each defendant as punitive damages in their working[5] and individual capacities. He also asks to be protected from any further reprisal or retaliation from the Pennsylvania Department of Corrections.

We will screen Plaintiff's Third Amended Complaint pursuant to 28 U.S.C. § 1915(e).

### DISCUSSION

Title 28, section 1915(e)(2) of the United States Code provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>    (A) the allegation of poverty is untrue; or
>    (B) the action or appeal—

---

[5] Insofar as Plaintiff raises claims against Defendants in their official capacities, he is barred from doing so. See 42 Pa. Cons. Stat. Ann. § 8512(b) (stating that Pennsylvania explicitly retains its claim to Eleventh Amendment sovereign immunity); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and a]s such, it is no different from a suit against the State itself") (internal citations omitted); Kentucky v. Graham, 473 U.S. 159, 167 (1985) (noting that Eleventh Amendment sovereign immunity bars suit against a state official acting in his or her official capacity).

4

> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

In screening a complaint under § 1915(e)(2)(B)(ii), failure to state a claim on which relief may be granted, the court is to apply the same analysis employed in deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Under a Rule 12(b)(6) analysis, the district court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Dismissal is warranted if a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. The Court clarified the Twombly plausibility standard in Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937 (2009), when it held that two working principles underlie the decision in Twombly:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—that the pleader is entitled to relief.

5

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly rise to an entitlement to relief.

Ashcroft, 129 S. Ct. at 1949–50 (citations omitted).

We will analyze the allegations in Plaintiff's Third Amended Complaint in light of the above-standard. Because Plaintiff proceeds pro se, we will attempt to address all potential legal claims set forth in the Third Amended Complaint.

### A.   Challenges to Custody Status

Plaintiff alleges that following his transfer from SCI-Albion to SCI-Coal Township on February 12, 2008, he was placed in the RHU and that he remained in the RHU on A.C. status until his transfer on January 2, 2009. He states that he met with the P.R.C. comprised of Defendants Verrano and McMillian on several occasions and he was told he would not be released to general population, but would continue to be confined in the RHU. He states that he was not given any notice or hearing regarding his confinement in violation of DC-ADM 802, Administrative Custody Procedures. He states that he appealed his confinement status to Defendants Piazza and Beard. He was told that his L.T.A.C. confinement in the RHU was approved by the Central Office - Defendant Beard. Plaintiff alleges violations of due process regarding his confinement in the RHU from February 12, 2008, the date he was transferred to SCI-Coal Township until January 2, 2009, when he was transferred to SCI-Smithfield.

As to Plaintiff's allegations regarding his custody status, it is well-established that an inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification that is sufficient to invoke due process, Cardenas v. Wigen, 921 F. Supp. 286, 291–92 (E.D. Pa. 1996) (citing Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)).

In <u>Jenkins v. Murray</u>, No. 08-4824, 2009 WL 3963638 (3d Cir. Nov. 20, 2009), the United States Court of Appeals for the Third Circuit held that a prisoner held in administrative custody for three months without notice and a hearing, as required by DC-ADM 802, did not state a violation of due process. The court, citing <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995), stated that states may under certain circumstances create liberty interests which are protected by the Due Process Clause. However, such interests are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to ordinary incidents of prison life. No liberty interest is involved where the state action does not present a dramatic departure from the basic conditions of confinement. The court found that state procedures such as those contained in DC-ADM 802 on their own do not create a due process liberty interest. <u>Id.</u> at *2–3. Citing <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708 (3d Cir. 1997), wherein the court found that exposure to conditions of administrative custody for periods of as long as fifteen months did not deprive an inmate of a liberty interest, the court held that a brief confinement in administrative custody does not state a due process violation, even if there was a lack of compliance with DC-ADM 802.

In <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995), the Supreme Court held that in a prison setting, protected liberty interests are generally limited to freedom from restraint that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

"[T]he baseline for determining what is 'atypical and significant'—the 'ordinary incidents of prison life'—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." <u>Griffin v. Vaughn</u>, 112 F. 3d 703, 706 (3d Cir. 1997) (quoting <u>Sandin</u>, 515 U.S. at 486). Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest.

7

In Sandin, the Supreme Court held that thirty days in disciplinary custody was not an "atypical and significant hardship" for purposes of the Due Process Clause. See Sandin, 515 U.S. at 487. In Griffin, the Court of Appeals for the Third Circuit concluded that fifteen months in administrative custody did not rise to the level of atypical and significant hardship. See Griffin, 112 F.3d at 708. In Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002), confinement in a Security Threat Group Management Unit was at issue. The court found that although the inmates in the unit faced additional restrictions, confinement there was not atypical and significant so as to implicate the Due Process Clause. One of the factors considered was that plaintiffs' confinement in the unit did not exceed the sentences imposed upon them or otherwise violate the Constitution. Fraise, 283 F.3d at 522.

Although Plaintiff disagrees with the classification/housing assignment he was subjected to following his transfer to SCI-Coal Township in February of 2008, he was housed in the RHU on A.C. status at SCI-Coal Township for less than a year. In January of 2009, Plaintiff was transferred to SCI-Smithfield. Plaintiff has no constitutional right to any particular custody classification. Moreover, by being held on A.C. status for eleven months, Plaintiff was not subjected to any conditions resulting in any atypical or significant hardship which would establish a violation of due process. Thus, we find that Plaintiff's allegations that he was held in A.C. status for eleven months without notice or a hearing in violation of DC-ADM 802 does not state a claim for a due process violation.

**B.    Access to Court Claim – Petition for Writ of Habeas Corpus, Northumberland County**

Plaintiff alleges that on March 12, 2008, he sent a petition for writ of habeas corpus to Defendant Strausser, the Clerk of Court of Northumberland County. He states that she

8

acknowledged receipt of the petition,[6] but that she did not provide him with a docket number or an application to proceed in formal pauperis. He states that he believes that Defendant Strausser did not file his petition and that she gave information to SCI-Coal Township defendants.

In order to state a denial of access to the courts claim, Plaintiff must demonstrate an actual injury imposing a concrete negative effect on a prisoner's attempt to seek judicial redress, either in pursuing an existing non-frivolous lawsuit or in the loss of the opportunity to pursue one at all. See Lewis v. Casey, 518 U.S. 343, 351 (1996). "Actual injury" includes the loss of a non-frivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. Id. at 351-54. Prisoners asserting denial of access to the courts claims must demonstrate their "actual injury" with specificity. See Gordon v. Morton, No. 04-4754, 131 F. App'x 797, 798 (3d Cir. 2005) (holding that inmate's claim against corrections officers for alleged deprivation of access to the courts failed where he did not demonstrate actual injury).

Because we are unable to determine what transpired regarding Plaintiff's petition for writ of habeas corpus in the Court of Common Pleas of Northumberland County, we find that it is plausible that Plaintiff may have a claim for denial of access to the court.[7] Thus, we will order service of the Third Amended Complaint on Defendant Strausser.[8]

## C.   Grievance Procedures

Plaintiff alleges that he submitted numerous grievances between February 12, 2008 and January 2, 2009 and that they were all denied by Defendants Burks and Watson. He states that

---

[6] In Document 14, page 40, Plaintiff filed a copy of a letter he allegedly sent to Defendant Strausser. A notation on the bottom of the letter states: "We received your action on 3/25/08. In the hands of the Judge for review."

[7] We note that the court's attempt to determine the status of Plaintiff's petition in the Court of Common Pleas of Northumberland County was unsuccessful.

[8] We find that Plaintiff's bald allegation of an equal protection violation against Defendant Strausser fails to state a claim.

Defendants Burks and Watson violated his constitutionally guaranteed efforts and that he is entitled to a grievance procedure that works.

As noted, Plaintiff filed numerous grievances arising out of his dissatisfaction with being housed at SCI-Coal Township. He was unhappy with the results and appealed the grievances through the administrative remedies system. Plaintiff alleges that Defendants failed to process the grievances and appeals to his liking with respect to many of the claims in the complaint. He is unhappy with the results/outcomes of the grievances and appeals and states that he is entitled to a grievance procedure to work.

Defendants' processing of inmate grievances does not, however, give rise to a constitutional claim. Prisoners are not constitutionally entitled to a grievance procedure and the state creation of one does not create any federal constitutional right. Additionally, the right of prisoners to seek redress of their grievances is the right of access to the courts, and this right is not compromised by the failure of the prison to address these grievances. See Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd 142 F.3d 430 (3d Cir. 1998). Thus, Plaintiff fails to state a claim as to these allegations.

**D.     Respondeat Superior**

Plaintiff alleges that Defendant Beard (Secretary of the Pennsylvania Department of Corrections) in this supervisory capacity as "CEO" of the Department of Corrections is responsible for what occurs at SCI-Coal Township. Plaintiff asserts that Defendant Beard approved his placement on L.T.A.C. without giving him a hearing and that he remained in the RHU in violation of the Fourteenth Amendment.

In order to assert an actionable civil rights claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). A prerequisite for a viable civil

10

rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. See Capone v. Marinelli, 868 F.2d 102, 106 n.7 (3d Cir. 1989); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976). It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Such allegations, however, must be made with appropriate particularity. See id. Liability may not be imposed under § 1983 on the principle of respondeat superior. Capone, 868 F.2d at 106.

In reviewing Plaintiff's allegations, it is evident that Plaintiff seeks to impose liability on defendant Beard, in his capacity as Secretary of the Department of Corrections. To the extent Plaintiff alleges that Defendant Beard gave permission to hold him on L.T.A.C. without a hearing in violation of the Fourteenth Amendment, Plaintiff has failed to set forth a due process violation. (See supra, Section A.)

**E.    Retaliation**

Plaintiff also sets forth general claims of retaliation in the body of his Third Amended Complaint. Actions undertaken in retaliation for the exercise of a constitutional right can form the basis of a § 1983 claim, even when the act, taken for a different reason, might have been legitimate. See White v. Napoleon, 897 F.2d 103, 111–12 (3d Cir. 1990). A plaintiff alleging retaliation bears the initial burden of showing that (1) he was engaged in a constitutionally protected activity, (2) that he suffered an "adverse action" at the hands of prison officials, and (3) that this constitutionally protected activity was the substantial or motivating factor in the prison officials' decision to discipline the plaintiff. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). The burden then shifts to the

defendant to show by a preponderance of the evidence that the plaintiff would have received the same punishment, or alternatively stated, that defendant would have taken the same action, absent the retaliatory motive for reasons reasonably related to a legitimate penological interest. Rauser v. Horn, 241 F.3d 330, 333–34 (3d Cir. 2001).

Plaintiff argues that he believes his status was changed to L.T.A.C. because he filed the petition for writ of habeas corpus. Thus, he alleges that he was retaliated against by Defendants Beard, Piazza, Verrano, McMillian, Burks, and Watson. While Plaintiff's allegations are tenuous, we will allow the retaliation claim to proceed and will direct service on Defendants Beard, Piazza, Verrano, McMillian, Burks, and Watson on this claim.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN MITCHELL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EDWARD G. RENDELL, Governor of<br>PENNSYLVANIA, et al.,<br><br>　　　　　Defendants. | Case No. 3:08-CV-787<br><br>(Judge Kosik) |

**ORDER**

AND NOW, this  16  day of March, 2010, IT IS HEREBY ORDERED THAT:

1.　Plaintiff's claims challenging his custody status and grievance procedures are DISMISSED from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

2.　Plaintiff's claims regarding denial of access to the court and retaliation will proceed; and

3.　The United States Marshal is directed to serve Plaintiff's Third Amended Complaint (Doc. 58) and a copy of this Memorandum and Order (Doc. 59) on Defendants Beard, Piazza, Verano, McMillian, Burks, Watson, and Strausser.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Edwin M. Kosik
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge