UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN MITCHELL, Plaintiff, | : | Civil Action No. 3:08-CV-0787 |
| v. | : | |
| | : | (Judge Kosik) |
| JEFFREY BEARD, et al., Defendants, | : | |

FILED
SCRANTON
OCT 27 2011
PER DEPUTY CLERK

## MEMORANDUM

Before the court are two Motions for Summary Judgment filed by the defendants in this action. For the reasons which follow, the Motions for Summary Judgment (Doc. 119 and Doc. 121) will be granted.

## I. BACKGROUND

Plaintiff, Stephen Mitchell, an inmate confined at the State Correctional Institution at Smithfield, Huntingdon, Pennsylvania, filed the instant civil rights action pursuant to 42 U.S.C. §1983 on April 28, 2008. The case proceeds on a Third Amended Complaint filed February 22, 2010 (Doc. 58).[1] The remaining seven defendants are Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections; Joseph Piazza, Superintendent at SCI-Coal Township; David Verrano and Robert McMillan, Deputy Superintendents at SCI-Coal Township; Sharon Burks and Cindy Watson, Chief Grievance Officers ("Corrections Defendants"); and Kathleen Strausser, Clerk of Court for Northumberland County. The remaining claims are retaliation and denial of access to the court. An Answer to the Third Amended Complaint with affirmative defenses was filed by Defendant Strausser on May 27, 2010. (Doc. 70). An Answer to the Third Amended Complaint with affirmative defenses was filed by the Corrections Defendants on June 1, 2010. (Doc. 71). The time for discovery has passed.

[1]Plaintiff filed the instant action while he was an inmate at SCI-Coal Township. The allegations arise out of conduct occurring during the eleven months Plaintiff was housed at SCI-Coal Township. On January 2, 2009, Plaintiff was transferred to SCI-Smithfield, Huntingdon, Pennsylvania, his current place of confinement.

On May 10, 2011, the Corrections Defendants filed a Motion for Summary Judgment (Doc. 119). A Motion for Summary Judgment (Doc. 121) was also filed by Defendant Kathleen Strausser. Supporting and opposing briefs and documentation have been filed by the parties and the matter is ripe for disposition.[2]

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[3] A fact is "material" if it will "affect the outcome of the suit under the governing law .... " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence. All reasonable inferences are also to be resolved

---

[2]On May 20, 2011, plaintiff filed a Motion for Default (Doc. 128) and a brief in support thereof (Doc. 129). In his motion for default and supporting documents (Docs. 130, 131, 132), plaintiff raises allegations that the Corrections Defendants failed to comply with this court's directive that dispositive motions be filed by May 10, 2011 (Doc. 118). However, the Corrections Defendants did file a Motion for Summary Judgment on May 10, 2011 (Doc. 119) and a Motion for Leave to File the Statement of Material and Undisputed Facts with the Support Brief (Doc. 120). We granted this Motion on May 12, 2011. (Doc. 125). Pursuant to M.D. Local Rule 7.5, the Defendant's brief in support of the Motion for Summary Judgment was due fourteen (14) days after the filing of the Motion. The Corrections Defendants' brief and supporting documents were due and filed on May 24, 2011 (Docs. 133 and 134). Thus, all the Corrections Defendants' documents were timely filed. The Plaintiff's Motion for Default (Doc. 128) will be denied.

On September 26, 2011, plaintiff filed an "Inquirery/Expidite Motion" (Doc. 138). In this motion, plaintiff asserts that he did not receive any of the Corrections Defendants' documents regarding the summary judgment motion, although these documents contained a Certificate of Service. (Docs. 119, 120, 133, and 134). Because plaintiff asserted that he hadn't received these documents, we entered an Order on September 27, 2011, directing the Clerk of Court to serve copies of these filings on Plaintiff and allowing plaintiff fourteen days in which to file any opposition to Corrections Defendants summary judgment motion. (Doc. 139). The Plaintiff filed seven documents in response to our Order. (Docs. 142-148).

[3] Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2010. The oft-cited summary judgment standard is now located in Rule 56(a) rather than Rule 56(c). Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute" ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact"), this change does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a) advisory committee's note (emphasis added).

against the moving party. Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, "a mere scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 249. In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a fair-minded jury could reasonably decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989)(quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant "must point to concrete evidence in the record" in that mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

## III. DISCUSSION

### A. CORRECTIONS DEFENDANTS

The sole claim remaining against the Corrections Defendants is based on retaliation. Specifically, plaintiff asserts that his status, while he was housed at SCI-Coal Township, was changed to Long-Term Administrative Custody ("L.T.A.C.") in retaliation for his filing a petition for writ of habeas corpus in the Court of Common Pleas of Northumberland County. In their brief in support of the Motion for Summary Judgment, Corrections Defendants argue that there was no correlation between plaintiff's placement on L.T.A.C. status and the petition for writ of habeas corpus

allegedly filed by plaintiff on March 12, 2008.[4] Corrections Defendants argue that the undisputed facts of record show that plaintiff has a history of violent and predatory behavior and that his change in custody status was done for a legitimate penological reason. Corrections Defendants submitted seven exhibits in support of their position. (Doc. 133, Exhibits A-G).

The Corrections Defendants assert that plaintiff was moved from SCI-Albion to SCI-Coal Township on February 12, 2008, due to a separation transfer, that is, that Plaintiff was to be separated from another inmate.[5] A Program Review Committee meeting was held on February 28, 2008 with plaintiff in attendance at which time he was to continue on Administrative Custody ("A.C.") status due to Plaintiff being a threat to the orderly running of the facility.[6] On March 18, 2008, Defendant Piazza advised the Deputy Secretary for the Eastern Region that the Program Review Committee had recommended that Plaintiff be considered for Restricted Release List based upon his long history of serious assaults and institutional sexual predatory behavior.[7] Additionally, Plaintiff acknowledged that he had three misconducts for assaults.[8] Corrections Defendants further assert that from 1998 when the Department of Corrections began tracking misconducts electronically, and March of 2008, Plaintiff incurred 19 misconducts including two for Assault, one for Aggravated Assault, two for Engaging in Sexual Acts or Sodomy with Others, three for

---

[4]We note that Defendant Strausser avers that she was unaware of any filing by Plaintiff in the Northumberland County Court. (Doc. 124, Exhibit B, Question 5; Exhibit D, Para. 5). Additionally, two Corrections Defendants assert that they were not aware of any such filing. (Doc. 133, Exhibit G, Defendant McMillan, No. 4-5; Defendant Verrano, No. 4-6).

[5]Deposition of Stephen Mitchell (Doc. 133, Exhibit A, p. 22); see Program Review Committee Action dated March 27, 2008 (Doc. 133, Exhibit B); Restricted Release Consideration memo dated March 19, 2008 (Doc. 133, Exhibit C).

[6]Cumulative Adjustment Record notes dated February 28, 2008 (Doc. 133, Exhibit D); Department of Corrections Defendants' Response to Plaintiff's Interrogatories (Doc. 133, Exhibit G, Defendant Verrano, No. 1).

[7]Doc. 133, Exhibit C. The document indicates that the request was approved by Defendant Beard and J. Barry Johnson, Deputy Secretary- Eastern Region, on March 19, 2008.

[8]Doc. 133, Exhibit A, p. 66.

threatening another person, one for Extortion by Threat of Violence and two for Criminal Violation of the PACC.[9] The record reflects that plaintiff had 19 separations on file at the time he was transferred to SCI-Coal Township. Plaintiff was transferred to SCI-Coal Township because he assaulted another inmate at SCI-Albion. Moreover, the Corrections Defendants represent that Plaintiff had a history of pressuring other inmates for sexual relationships and acting out in an aggressive manner when his attempts failed.[10] Based upon Plaintiff's assaultive history and the threat he would pose to other inmates in the general population, the Program Review Committee strongly recommended that Plaintiff be placed on Restricted Release List.[11] As we indicated earlier, the recommendation was approved on March 19, 2008 by J. Barry Johnson, Deputy Secretary for the Eastern Region.

On March 27, 2008, the Program Review Committee consisting of Defendants McMillan and Verrano, and L. Chismar, relayed to Plaintiff that he would be held on L.T.A.C. status as it was believed he could be a danger to release to the general population because of his assaultive history.[12] Corrections Defendants assert that the decision to place plaintiff on L.T.A.C. had nothing to do with his filing a petition for writ of habeas corpus. The record reflects that during the entire eleven (11) month period Plaintiff was at SCI-Coal Township, he was in Administrative Custody, until his January 2, 2009 transfer to SCI-Smithfield.

Plaintiff asserts that he was placed on L.T.A.C. status in retaliation for his filing a habeas corpus action in Northumberland County. Specifically, plaintiff points to the timing of the two events. Because plaintiff filed his petition for writ of habeas corpus on March 12, 2008 and he was approved for L.T.A.C. status on March 19, 2008, he alleges that the events were related and that the change in custody status was in

---

[9]Doc. 133, Exhibit C, p.1.

[10]Doc. 133, Exhibit C, pp.1-2.

[11]Doc. 133, Exhibit C, p.3.

[12]Doc. 133, Exhibit B.

retaliation for his filing a habeas corpus action in Northumberland County Court. Moreover, Plaintiff believed that the Corrections Defendants' attitude toward him changed following the filing of the habeas corpus action. He also argues that the Corrections Defendants inappropriately relied on past conduct when they changed his custody status.[13]

Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials that is sufficient to deter a person of ordinary firmness from exercising the protected activity; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001)(quoting Allah, 229 F.3d at 225). This third element uses a burden-shifting framework. The inmate bears the initial burden of proving that his constitutionally protected conduct was a substantial motivating factor in the decision to retaliate against him. Rauser at 333-34. A plaintiff must come forward with more than "general attacks" upon the defendant's motivations, and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998). Once the prisoner meets this burden, the burden then shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same action even in the absence of the protected activity. Rauser, 241 F.3d at 333. Thus "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334; see also Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002)(retaliation claim not stated where preponderance of the evidence shows that defendants would have

[13]Doc. 133, Exhibit A, Deposition of Plaintiff, pp. 26-27, 45-48; Docs. 144, 146,147, Documents in Opposition to Summary Judgment.

taken the same action for reasons reasonably related to penological interest).

In considering the third element, the court must take into account that the difficult task of prison administration is best left to prison officials who possess the necessary expertise. Rauser, 241 F.3d at 334 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). Even if an inmate can demonstrate that the exercise of his constitutional rights was a substantial or motivating factor in the decision to discipline him, so long as a prison official can prove that absent the protected conduct he would have made the same decision for reasons reasonably related to a legitimate penological interest, he will prevail on a claim of retaliation. Id.

We find that Plaintiff meets the first prong of the Rauser test in that the exercise of his rights under the First Amendment is constitutionally protected activity. However, to state a retaliation claim, the adverse action suffered, in this case, being placed on L.T.A.C. status, must be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Plaintiff maintains that he was retaliated against for filing a habeas corpus action in state court. Plaintiff subsequently filed the instant action, as well as several other actions in this court, thereby demonstrating that he was not deterred from doing so by his placement on L.T.A.C. status.

Moreover, even if Plaintiff meets the second prong in Rauser, we find that he fails to meet the third prong. Plaintiff fails to show that the filing of a habeas corpus action in state court was a substantial or motivating factor in the change of custody status. As support for his retaliation claim, Plaintiff points to the timing of the incidents and his perception that the Corrections Defendants' attitude toward him changed following the filing of the habeas corpus action. However, as we indicated earlier, the Defendants' evidence establishes that Defendant Strausser denies any knowledge of the filing, and therefore could not have notified the Corrections Defendants.[14] Additionally, at least two of the Corrections Defendants asserted that

---

[14]We note that Plaintiff's evidence in support of his claim that Defendant Strausser failed to file his habeas corpus action indicates that the habeas corpus action was received in Northumberland County Court on March 25, 2008. (Doc. 14, p. 40). Thus, Plaintiff's evidence appears to contradict his argument that the Corrections Defendants were notified of his state court action by Defendant Strausser prior to their seeking L.T.A.C. status on March 18, 2008.

they were unaware of the state court filing. Finally, even if the Corrections Defendants were aware of the filing, the evidence shows that the decision to place Plaintiff on L.T.A.C. status was based on reasons reasonably related to a legitimate penological interest, i.e., the Plaintiff's record of assaultive behavior. While plaintiff argues that his transfer to L.T.A.C. status was inappropriately based on past conduct, the record reflects that plaintiff's transfer from SCI-Albion to SCI-Coal Township was related to plaintiff's assault on an inmate at SCI-Albion.[15]

We find that Plaintiff has failed to establish all three of the prongs set forth in Rauser. Accordingly, we will grant the Corrections Defendants' Motion for Summary Judgment.

**B. DEFENDANT STRAUSSER**

A claim of denial of access to the courts remains against Defendant Kathleen Strausser, Clerk of Court for Northumberland County. Plaintiff asserts that on March 12, 2008, he sent a petition for writ of habeas corpus to Defendant Strausser.[16] Plaintiff asserts that Defendant Strausser acknowledged receipt of the petition, but that she did not provide him with a docket number or an application to proceed in forma pauperis. He states that he believes that Defendant Strausser did not file his petition. He also asserts that she gave information about the filing of the habeas corpus petition to Corrections Defendants. In support of his allegations, Plaintiff submits a copy of a letter sent to the Clerk of Court's Office dated March 5, 2008, requesting information on how to file a habeas corpus action; and, a response which advises Plaintiff that the Office did not have any forms and that he would have to know how to proceed on his own.[17] Plaintiff also submits a copy of a letter he sent to Defendant Strausser dated March 27, 2008, requesting information on a habeas corpus action he allegedly filed with the court on March 13, 2008. A notation on the

---

[15]Doc. 133, Exhibit C.

[16]The petition was allegedly addressed to Ms. Kathleen Strausser, Clerk of Court of Northumberland County. (Doc. 133, Exhibit A, Deposition of Plaintiff, p. 18).

[17]Doc. 14, pp. 37, 38.

bottom of the letter states: "We received your action on 3/25/08. In the hands of the Judge for review."[18] He also submitted a cash slip requesting postage be deducted for a document to be sent to Defendant Strausser dated March 12, 2008 and an envelope received by Plaintiff from M. Kathleen Strausser, Prothonotary and Clerk of Courts, post marked either March 13 or March 18, 2008.[19]

In her Motion for Summary Judgment, Defendant Strausser argues that there is no evidence of record that she had any personal involvement in preventing Plaintiff from filing the petition for writ of habeas corpus. Defendant Strausser also argues that she is entitled to summary judgment for any negligence, or the negligent supervision of the Clerk of Court's employees, because there is no constitutional violation for negligent action or inaction. Finally, Defendant Strausser argues that Plaintiff cannot establish a denial of access to the court claim because there is no evidence that Plaintiff suffered any actual injury as a result of his habeas corpus petition not being filed. In her Declaration in support of the Motion, Defendant Strausser asserts that she has never seen any documents sent to her by Plaintiff, that she never wrote a letter to Plaintiff, that she was not aware of a Petition for Writ of Habeas Corpus submitted by Plaintiff in March of 2008, and that if a Petition was submitted by Plaintiff, she would not have reviewed it, and if there were a question on in forma pauperis status, it would be forwarded to a Judge for review.[20]

In order to state a claim for denial of access to the courts, a Plaintiff must demonstrate that a deliberate act by the defendant hindered his access to the courts. Simple negligent acts will not do. Tucker v. Arnold, 361 Fed. App'x. 409 (3d Cir. 2010). Additionally, Plaintiff must demonstrate an actual injury imposing a concrete negative effect on a prisoner's attempt to seek judicial redress, either in pursuing an existing non-frivolous lawsuit or in the loss of the opportunity to pursue one at all.

---

[18]Doc. 14, p. 40; Doc. 133, Exhibit A, Deposition of Plaintiff, pp. 17-19, 43-46, 51-52; Doc. 127; Doc. 147.

[19]Doc. 14, pp. 36, 39.

[20]Doc. 124, Exhibit D.

See Lewis v. Casey, 518 U.S. 343 (1996). "Actual Injury" includes the loss of a non-frivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. Id. Prisoners asserting a denial of access to the courts claim must demonstrate their "actual injury" with specificity. See Gordon v. Morton, 131 Fed. App'x 797, 798 (3d Cir. 2005) (holding that inmate's claim against corrections officers for alleged deprivation of access to the courts failed where he did not demonstrate actual injury).

While Plaintiff has submitted evidence to indicate that he did send documents to, and received correspondence from, the Northumberland County Clerk of Court's Office, the evidence does not establish a deliberate act on the part of Defendant Strausser. Plaintiff has not provided any evidence to show that Defendant Strausser intentionally or deliberately refused to process or file his habeas corpus action. See, Tucker v. I'Jama, 361 Fed. App'x. 405 (3d Cir. 2010).

Even if Plaintiff had provided evidence of an intentional act, he fails to show that he sustained an actual injury. Plaintiff submits that he filed a petition for writ of habeas corpus challenging the conditions of his confinement at SCI-Coal Township and, in particular, his status in Administrative Custody, seeking separation from another prisoner, and seeking transfer to another facility.[21] Because Plaintiff was not challenging his conviction or sentence, a habeas corpus petition was not the proper vehicle for challenging the conditions of his confinement. Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). Moreover, even if Plaintiff had brought a civil rights action challenging his Administrative Custody status, at the time Plaintiff filed his petition in the Northumberland County Court, he had only been housed in Administrative Custody at SCI-Coal Township for approximately one month. See Sandin v. Conner, 515 U.S. 472 (1995); Griffin v. Vaughn, 112 F. 3d 703 (3d Cir. 1997). Finally, the evidence submitted by the Correctional Defendants shows that there was a legitimate penological reason for maintaining Plaintiff's housing status in Administrative

[21]Doc. 133, Exhibit A, Deposition of Plaintiff, pp. 20-22, 43-45.

Custody. Because Plaintiff cannot show that his petition for writ of habeas corpus would have contained a meritorious or non-frivolous claim, he cannot demonstrate actual injury with respect to the alleged failure of Defendant Strausser to file his petition for writ of habeas corpus. Accordingly, we will grant Defendant Strausser's Motion for Summary Judgment.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN MITCHELL, | : | |
| Plaintiff, | : | Civil Action No. 3:08-CV-0787 |
| v. | : | |
| | : | (Judge Kosik) |
| JEFFREY BEARD, et al., | : | |
| Defendants, | : | |

**ORDER**

AND NOW, THIS 27th DAY OF OCTOBER, 2011, IT IS HEREBY ORDERED THAT:

(1) The Plaintiff's Motion for Default (Doc. 128) is **DENIED**;

(2) The Motions for Summary Judgment of the Corrections Defendants and Defendant Strausser (Docs. 119 and 121) are **GRANTED**;

(3) Judgment is hereby **ENTERED** in favor of the Corrections Defendants and Defendant Strausser and against the Plaintiff; and

(4) The Clerk of Court is directed to **CLOSE** this case.

Edwin M. Kosik
United States District Judge